# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EDDIE EARL HURT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-CV-576-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant, Eddie Earl Hurt ("Hurt"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Hurt's application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Hurt appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Hurt was not disabled. For the reasons discussed below, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### Claimant's Background

Hurt was 54 years old at the time of the hearing before the ALJ on December 20, 2011. (R. 57). He had graduated from high school and had attended trade school. *Id.*

Hurt testified that he did not have a driver's license. (R. 56-57). Hurt stated that he had no history of alcohol or illegal drugs since he had been in the military. (R. 58). He smoked a pack of cigarettes per day. (R. 59).

Hurt testified that he had lower lumbar fusion surgery on his back in 1991 and 1992. *Id.* Hurt said that he could not return to work as a copier repair technician until 1996, five years after the surgery. (R. 60). He stated that Dr. Mark Hayes ("Dr. Hayes") had restricted him to lifting 25 pounds after the surgery. *Id.*

Hurt testified that he could walk about three or four blocks before his back would start hurting and he would have to stop. (R. 61). He would get pain and spasms in his back and left leg. (R. 62). Hurt could stand for 30 minutes and sit for 45 minutes before having to stand. (R. 63). He could not bend without pain. *Id.* Hurt said that he did all the household chores. *Id.*

Hurt said that his medications caused drowsiness. (R. 64). Hurt described his pain on a normal day as being an eight out of ten. (R. 65). Hurt stated that he had gone to the emergency room at OSU Medical a month earlier because of his back pain. (R. 65-66).

Hurt testified that he had problems with both of his shoulders and that he had surgery on his right shoulder in March 2011 before the December 2011 hearing. (R. 66). He said that his doctor had told him that he needed surgery on his left shoulder. *Id.* He said that his problems with his shoulders limited him from doing any activities that involved moving his shoulder. (R. 66-67). He said that he could not reach overhead with his hands to do something like change a light bulb. (R. 67). He said that he could reach up to get something from a top shelf with his left hand, but not with his right. *Id.*

Hurt said that he had tingling and spasms in his legs. *Id.* Hurt stated that his high blood pressure was not controlled, and it caused blurred vision and headaches. *Id.* He woke with

blurry vision and a headache. (R. 68). His headaches lasted two or three hours and became more intense if he moved. *Id.* Hurt stated that his diabetes was under control. *Id.*

The administrative transcript includes an evaluation by Dr. Hayes dated December 16, 1999, stating that Hurt had a Rogozinski fusion and instrumentation eight years earlier. (R. 176). Hurt was working as a service technician, and he wanted Dr. Hayes to determine if it was okay for him to exercise. *Id.* Hurt had no tenderness in his back, and the incision was well healed and benign in appearance. *Id.* Dr. Hayes stated that Hurt was functioning very well, and he discussed exercises with Hurt. *Id.*

Hurt presented at the emergency room of Oklahoma State University Medical Center ("OSU Medical") on November 19, 2008. (R. 178-85). He complained of blurry vision, increased urinary frequency, a bad taste in his mouth, and tingling in his legs. (R. 183). Hurt had a history of hypertension and gastroesophageal reflux disease ("GERD"). *Id.* Hurt was diagnosed with diabetes, and he was admitted for education and treatment. (R. 184). Hurt stated that he was employed as a car mechanic. (R. 180). On examination, Hurt had mild calf tenderness elicited bilaterally, with the left greater than the right. (R. 181). Lumbar paraspinal tightness was noted, with the left greater than the right. *Id.* Hurt was discharged November 21, 2008, and he was prescribed lisinopril, NovoLog, Lantus, and Actos. (R. 178-79).

Hurt was seen for diabetes education at OSU Medical on March 30, 2009. (R. 307-08, 311).

Hurt was seen by the Osteopathic Manipulative Medicine clinic at OSU Physicians on May 15, 2009, for low back pain, headaches, and pain and numbness down his left leg. (R. 236-37). Hurt was seen again on May 28, 2009, June 25, 2009, and July 9, 2009. (R. 231-35).

On December 27, 2010, four x-rays of Hurt's left elbow were taken at OSU Medical, and he was diagnosed with olecranon bursitis. (R. 309-10).

On March 24, 2011, Hurt had three procedures performed at OSU Medical: an arthroscopy shoulder rotator cuff repair; a shoulder scope bone shaving; and an arthroscopy shoulder distal claviculectomy. (R. 299-302, 304-05). His preoperative diagnoses were right shoulder partial thickness rotator cuff tear and right shoulder impingement syndrome. (R. 300). His secondary diagnoses were listed as chondromalacia, chronic airway obstruction, diabetes, hypertension, and tobacco use disorder. (R. 305).

On May 16, 2011, Hurt presented to the emergency room at OSU Medical, complaining of pain in his right elbow, right shoulder, and right wrist that he had experienced since his shoulder operation. (R. 295-98). On examination, there was some tenderness around Hurt's right olecranon and right wrist. (R. 297). The impression was joint pain, and he was prescribed Lortab. *Id.*

Hurt presented to the emergency room at OSU Medical on November 27, 2011, complaining of back pain. (R. 312-20). Hurt described the pain as a constant, dull, throbbing pain, mostly on his left side and isolated to the lower back. (R. 313) On examination, he had left paralumbar muscle tenderness, and he walked normally. (R. 314). The physician characterized the visit as a "benign exam." *Id.* The diagnosis was exacerbation of chronic low back pain, and Hurt was prescribed Percocet. *Id.*

Agency consultant G. Bryant Boyd, M.D., examined Hurt on March 9, 2009. (R. 215-21). Hurt complained of pain in both shoulders and in his back, and he said that he could not walk or stand for long. (R. 215). Hurt's grip was strong and equal bilaterally, and he was able to use his hands for gross and fine manipulation. (R. 216). Hurt's gait was normal for speed,

4

stability, and safety. *Id.* On the range of motion evaluation chart, Dr. Boyd indicated that Hurt's back flexion was eighty out of ninety. (R. 218). He wrote that both Hurt's back extension and flexion were within normal limits, as were his shoulder abduction and wrist rotation. (R. 218-20).

Nonexamining agency consultant J. Marks-Snelling, D.O. completed a Physical Residual Functional Capacity Assessment on March 27, 2009. (R. 222-29). Dr. Marks-Snelling indicated that Hurt could perform work at the "light" exertional level. (R. 223). For narrative explanation, Dr. Marks-Snelling explained that Hurt had failed to complete forms and to respond to requests for additional information. (R. 223-24). She briefly summarized the report of Dr. Boyd. *Id.* For postural limitations, Dr. Marks-Snelling indicated that Hurt could occasionally stoop and could frequently climb, balance, kneel, crouch, and crawl. (R. 224). Dr. Marks-Snelling found no manipulative, visual, communicative, or environmental limitations. (R. 225-26).

Agency consultant Brad Liston, D.O. examined Hurt on July 8, 2010. (R. 243-49). Hurt complained of back pain due to a herniated disk, which was exacerbated by walking and lifting objects. (R. 243). Hurt had a history of chronic lumbar pain, diabetes, depression, and hypertension. *Id.* Dr. Liston found that Hurt had full range of motion in his spine, except for limited back flexion secondary to pain. (R. 244).

Nonexamining agency consultant Carmen Bird, M.D., completed a Physical Residual Functional Capacity Assessment on September 2, 2010. (R. 269-77). Dr. Bird indicated that Hurt could perform work at the "light" exertional level. (R. 270). For narrative explanation, Dr. Bird reviewed treating records from OSU Medical, and she summarized Dr. Liston's report. (R. 270-71). She noted that Hurt had not returned forms relating to his activities of daily living. *Id.* For postural limitations, Dr. Bird indicated that Hurt could occasionally stoop and could

frequently climb, balance, kneel, crouch, and crawl. (R. 271). Dr. Bird found no manipulative, visual, communicative, or environmental limitations. (R. 272-73).

Agency consultant Minor W. Gordon, Ph.D. completed a psychological evaluation of Hurt on June 12, 2010. (R. 252-54). Hurt stated he had problems with his back and his left leg, and his level of pain depended on his level of activity. (R. 252). Hurt denied ever bring treated by any type of mental health provider. *Id.* He denied any current or past alcohol problem or illicit drug abuse. *Id.* He smoked a pack of cigarettes per day. *Id.* Dr. Gordon stated that Hurt walked slowly and his level of motor activity was less than normal. *Id.* Hurt evidenced motor control problems in the form of difficulty arising from his chair. *Id.* He was attentive and maintained good eye contact. *Id.* His mood was mildly depressed. *Id.* Hurt had difficulty initiating and maintaining sleep. *Id.* Hurt described his energy as "low" and his appetite as "poor." *Id.* Dr. Gordon determined that Hurt could communicate comfortably in a social circumstance, avoid common danger, maintain his own personal hygiene, and pass judgement in a work situation. (R. 253). Hurt admitted to occasionally thinking people were against him. *Id.* Hurt admitted to having an occasional nightmare about "people shooting people." *Id.* Hurt's short term memory and his immediate retention and recall were assessed as adequate. *Id.* On Axis I,[1] Dr. Gordon diagnosed Hurt with mild depression, not otherwise specified. *Id.* Hurt's Global Assessment of Functioning ("GAF")[2] was scored as 70. *Id.*

---

[1] The multiaxial system "facilitates comprehensive and systematic evaluation." *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereinafter "DSM IV").

[2] The GAF score represents Axis V of a Multiaxial Assessment system. *See* DSM IV at 32-36. A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id.* at 32. *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012).

Nonexamining agency consultant Burnard Pearce, Ph.D. completed a Psychiatric Review Technique form dated August 11, 2010 concluding that Hurt had no severe mental impairments. (R. 255-67). Nonexamining agency consultant Cynthia Kampschaefer, Psy.D., completed a second Psychiatric Review Technique form dated January 29, 2011, finding that Hurt had no severe mental impairments. (R. 277-89).

**Procedural History**

Hurt filed his application for supplemental security income benefits in May 2010. (R. 124-27). The application was denied initially and on reconsideration. (R. 78-81, 86-88). An administrative hearing was held before ALJ Edmund C. Werre on December 20, 2011. (R. 50-73). By decision dated February 8, 2012, the ALJ found that Hurt was not disabled. (R. 34-49). On July 3, 2013, the Appeals Council denied review. (R. 1-4). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

**Social Security Law and Standard Of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[3] *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009)

---

[3] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his

7

(detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Wall*, 561 F.3d at 1052 (quotations and citations omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

**Decision of the Administrative Law Judge**

At Step One, the ALJ found that Hurt had not engaged in any substantial gainful activity since his application date of May 7, 2010. (R. 39). At Step Two, the ALJ found that Hurt had

---

ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

severe impairments of degenerative disc disease status post remote lumbar fusion; and type 2 diabetes mellitus. *Id.* At Step Three, the ALJ found that Hurt's impairments did not meet any Listing. (R. 40).

The ALJ found that Hurt had the RFC to perform a range of work at the light exertional level with occasional stooping and no overhead reaching. (R. 41). At Step Four, the ALJ determined that Hurt could return to past relevant work. (R. 44). As an alternative finding at Step Five, the ALJ found that there were a significant number of jobs in the national economy that Hurt could perform, taking into account his age, education, work experience, and RFC. (R. 45-46). Therefore, the ALJ found that Hurt was not disabled at any time since May 7, 2010. (R. 46).

**Review**

Hurt asserts errors in the ALJ's RFC determination and in his Step Four and Step Five findings. Regarding the ALJ's RFC determination, Hurt raises issues relating to his nonsevere mental impairments and to his shoulder and elbow issues. The Court agrees that the ALJ did not adequately discuss the objective medical evidence relating to Hurt's shoulder issues. Moreover, the opinion evidence of Dr. Bird, on which the ALJ relied, was given more than six months before Hurt's right shoulder surgery, and therefore Dr. Bird, in giving her opinion regarding Hurt's RFC, could not have taken into account this significant probative evidence. Under these circumstances, the ALJ's decision must be reversed for further consideration.

An ALJ must discuss more than just the evidence favorable to an opinion that a claimant is not disabled:

> [I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). It is error to ignore evidence that would

9

support a finding of disability while highlighting the evidence that favors a finding of nondisability. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

Here, the ALJ made no mention of the surgery that Hurt had on his right shoulder on March 24, 2011. (R. 37-46). The ALJ also did not list shoulder issues as a severe impairment at Step Two. (R. 39-40). The ALJ's failure to discuss the uncontroverted objective evidence relating to Hurt's shoulder issues is a violation of his basic duty to discuss significantly probative evidence that arguably favors the claimant's claim of disability. *Carpenter v. Astrue*, 537 F.3d 1264 1266-70 (10th Cir. 2008) (reversing because ALJ's discussion of evidence tending to support the claim of disability was inadequate and ALJ ignored some evidence favorable to claimant). Given Hurt's testimony that his problems with his shoulders kept him from activities that involved any movement of his shoulders, the ALJ's failure to discuss the objective evidence relating to Hurt's shoulders is not a "technical omission" that can be ignored. *Keyes-Zachary*, 695 F.3d at 1166 ("merely technical omissions in the ALJ's reasoning do not dictate reversal"); *Jones v. Colvin*, 514 Fed. Appx. 813, 823-24 (10th Cir. 2013) (unpublished) (ALJ's omissions called into question the ALJ's application of the appropriate legal standards).

The ALJ's omission of the uncontroverted and significantly probative evidence of Hurt's shoulder surgery is especially troublesome given that the ALJ gave "great weight" to the opinion evidence of Dr. Bird. (R. 43-44). Dr. Bird's assessment was given in September 2010, more than six months before Hurt's March 2011 surgery. Hurt's right shoulder surgery would appear to be a material change in the relevant medical record, making Dr. Bird's opinion stale. *See Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012) (ALJ encouraged to obtain updated exam when opinion of agency examining consultant was "patently stale" in that the relevant medical record had "material changes" after his opinion was given). The Court is not required to rule directly on

whether under these circumstances Dr. Bird's report could be substantial evidence supporting the ALJ's RFC determination because the ALJ's own omissions in discussing the uncontroverted evidence of Hurt's shoulder surgery justify reversal. On remand, as the Tenth Circuit did in *Chapo*, this Court encourages the ALJ to obtain an updated examination or report "to forestall any potential problem arising in this respect on remand." *Id.*

## Conclusion

The Court takes no position on the merits of Hurt's disability claim, and "[no] particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because this case is reversed based on the ALJ's failure to discuss the significantly probative evidence supporting Hurt's claim of disability, the undersigned declines to discuss Hurt's other asserted appeal issues. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Hurt.

Based on the foregoing, the decision of the Commissioner denying disability benefits to Claimant is **REVERSED AND REMANDED.**

Dated this 17th day of November 2014.

_____
Paul J. Cleary
United States Magistrate Judge